## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **ALEXANDER PROPERTIES, L.L.C.,** | * |  |
| Appellant | * |  |
| v. | * | **CIVIL NO. JKB-11-3056** |
| **THE PATAPSCO BANK,** | * |  |
| Appellee | * |  |

* * * * * * * * * * * *

## **MEMORANDUM**

The issue that must be decided in this appeal is whether the bankruptcy court properly declined approval of Appellant's disclosure statement because Appellant's proposed Chapter 11 reorganization plan was unconfirmable inasmuch as it depended upon

1. the bankruptcy court's ordering Appellee to vacate confessed judgments obtained by Appellee in Maryland state courts against nondebtor guarantors on a loan made by Appellee to a nondebtor borrower and

2. the bankruptcy court's ordering Appellee to return to a nondebtor borrower cash collateral, on a loan guaranteed by Appellant, after Appellee exercised its contractual remedies upon the nondebtor borrower's default

when both the confessed judgments and the exercise of dominion over the cash collateral occurred before Appellant filed his petition for reorganization.

This Court affirms the bankruptcy court's Order of September 29, 2011, for the reasons stated below.

*I. Procedural History*

Alexander Properties, L.L.C. ("Properties" or "Appellant"), filed a voluntary petition for reorganization pursuant to Chapter 11 of the bankruptcy laws on December 14, 2010. On March 7, 2011, Properties filed its plan of reorganization and its disclosure statement. The Patapsco Bank ("Patapsco" or "Appellee") filed its objection to the disclosure statement on April 13, 2011. The Bankruptcy Court for the District of Maryland, the Honorable Nancy V. Alquist presiding, held a hearing on the disclosure statement on July 26, 2011, and denied approval of it on September 29, 2011. Properties timely appealed.

*II. Factual Background*

Neither side has taken issue with the bankruptcy court's recitation of facts, and this opinion relies upon it and the designations of record for the facts leading up to the legal proceedings in this case.

Properties is an affiliate of Alexander Holdings, L.L.C. ("Holdings"). Properties is the owner of a parcel of commercial real property, a strip mall, located at 808-810 Nursery Road in Linthicum, Maryland.[1] Holdings borrowed $3,321,000 from Patapsco to finance construction of improvements to the property. The promissory note given by Holdings to Patapsco was secured by *inter alia* a deed of trust on the property, a guaranty and indemnification agreement by Properties, and guaranty and indemnification agreements by four individual guarantors and Alexander Stone, Inc. ("Stone"). The promissory note, dated September 15, 2006, was further secured by a deposit account pledge agreement "whereby the Borrower [Holdings] and Guarantors herein pledge a security interest for the benefit of the Lender [Patapsco] in a deposit account in the name of the Borrower held by the Lender in the amount of [$500,000]." In

---

[1] The Bankruptcy Court referred to Holdings as the owner of the real property. However, both Appellant and Appellee agree that Properties is the owner.

Appellant's brief, it states the funds to open the collateral deposit account were provided by Stone. (Appellant's Br. 4.) During the initial term of the loan, which was a maximum of 18 months from the date of origination, Holdings was to make monthly payments of interest only to Patapsco. If and when the loan was converted to a permanent term, Holdings was to make monthly payments of principal and interest. The note provided for various remedies in the event of default, including acceleration of the loan and a confession of judgment. After the 18-month initial term expired, the loan was converted to a permanent term on June 23, 2008. This modification agreement involved the same parties as under the original promissory note. According to the proposed disclosure statement, Patapsco was required to release funds from the collateral deposit account based on the percentage of the shopping center that was leased to tenants.

Appellant further stated in its disclosure statement that, although construction was completed in April 2008, Properties had difficulty obtaining tenants to lease available spaces in the shopping center, apparently relying upon loans from Stone to Holdings to make the monthly payments. Holdings fell behind in its payments in March 2010. On June 3, 2010, Patapsco obtained confessed judgments in Maryland state court against Holdings and each of the guarantors in the amount of $3,274,151.76 plus prejudgment interest and costs. On September 1, 2010, Patapsco commenced proceedings in state court to foreclose the interest of Properties in the shopping center, and the foreclosure sale was set for December 15, 2010. On December 14, 2010, Patapsco set off the amount of $358,316.47 in the collateral deposit account against the outstanding balance of the loan due under the promissory note. Apparently later the same day, Properties filed its Chapter 11 petition.

### III. Standard of Review

The parties agree that the only issue to be resolved is a question of law. Consequently, this Court reviews the decision of the bankruptcy court *de novo*. *In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006); *Rosen v. Kore Holdings, Inc. (In re Rood)*, 448 B.R 149, 157 (D. Md. 2011).

### IV. Analysis

Appellant makes two arguments to support its contention that the bankruptcy court erred when it declined to approve Appellant's disclosure statement. First, it argues that the power granted to a debtor under the bankruptcy laws to cure a default includes the ability to reverse a setoff effectuated before the debtor's petition to reorganize was filed. Second, it argues that the bankruptcy court has authority, in confirming a plan of reorganization, to compel Patapsco to vacate the confessed judgments against the guarantors and restore the loan to its predefault status with respect to all parties obligated in connection with the loan.

 *A.  Setoff*

Appellant does not dispute that Patapsco's prepetition setoff was valid when made. But Appellant asserts that its power to cure default under Title 15, United States Code, Sections 1123 and 1124, includes the right to reverse the prepetition setoff Patapsco made from the collateral deposit account held by Patapsco in the name of Holdings, the borrower on the loan.

The right of setoff predated the bankruptcy laws. Setoff permits

> entities that owe each other money to apply their mutual debts against each other, thereby avoiding "the absurdity of making A pay B when B owes A." Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy. Here it is undisputed that, prior to the bankruptcy filing, petitioner [Citizens Bank of Maryland] had the right under Maryland law to set off the defaulted loan against the balance in the checking account.

4

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18-19 (1995) (citing *Studley v. Boylston Nat. Bank*, 229 U.S. 523, 528 (1913)). Where mutual debts and claims exist between a creditor and a debtor, the right of setoff may be exercised. *Cohen v. The Savings Bldg. & Loan Co. (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.)*, 896 F.2d 54, 57 (3d Cir. 1990). But, "'[t]o be mutual, the debts must be in the same right and between the same parties, standing in the same capacity.'" *Id.* at 59 (citation omitted); *accord French v. Bank One (In re Rehab Project, Inc.)*, 238 B.R. 363, 373 (Bankr. N.D. Ohio 1999).

Appellant appears to assume that because it is affiliated with Holdings, it stands in the shoes of Holdings, but it has provided no citation of evidence in the record to support that assumption. Thus, Appellant is implicitly basing its setoff argument, which requires mutuality of debt between the same parties, on its unsupported conclusion that the collateral deposit account at issue was a debt owed by Patapsco to Appellant. In fact, it was a debt owed by Patapsco to Holdings, according to the record evidence. *See Citizens Bank*, 516 U.S. at 21 (bank account "consists of nothing more or less than a promise to pay, from the bank to the depositor"); *United States v. Butterworth-Judson Corp.*, 267 U.S. 387, 394-95 (1925) ("Ordinarily, the relation existing between banks and their depositors is that of debtor and creditor, out of which the right of set-off arises. As a general rule, in the absence of an agreement to the contrary, a deposit not made specifically applicable to some other purpose may be applied by the bank in payment of the indebtedness of the depositor"). Consequently, what Appellant is seeking is the restoration of funds to the account held by Holdings, which is a nondebtor. To carry this argument further, not only does Appellant want the money restored to Holdings, but it also wants to deaccelerate the loan and use the money formerly in Holdings's account to cure default as to all parties on the loan. Thus, Patapsco would be put in the position of paying money to itself in order to cure the default. This bizarre result must be rejected.

Even if the debts could be viewed as mutual between Patapsco and Properties, it would be improper for the bankruptcy court to have ordered a reversal of the setoff. The *Citizens Bank* opinion makes clear that § 553 preserves the right of setoff in bankruptcy with limited exceptions. 516 U.S. at 18-19. *See also Durham v. SMI Industries Corp.*, 882 F.2d 881, 883 (4th Cir. 1989) ("Section 553 does not create a right of setoff or prescribe the means by which a setoff must be executed in order to be effective. It merely preserves any right of setoff accorded by state law, subject to certain limitations"). The section itself provides:

> (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that -
>
>   (1) the claim of such creditor against the debtor is disallowed;
>
>   (2) such claim was transferred, by an entity other than the debtor, to such creditor -
>
>     (A) after the commencement of the case; or
>
>     (B)(i) after 90 days before the date of the filing of the petition; and
>
>       (ii) while the debtor was insolvent (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561); or
>
>   (3) the debt owed to the debtor by such creditor was incurred by such creditor -
>
>     (A) after 90 days before the date of the filing of the petition;
>
>     (B) while the debtor was insolvent; and
>
>     (C) for the purpose of obtaining a right of setoff against the debtor (except for a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, or 561).
>
> (b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(17), 362(b)(27), 555, 556, 559, 560, 561, 365(h), 546(h), or

365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of -

   (A) 90 days before the date of the filing of the petition; and

   (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

   (2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.


   (c) For the purposes of this section, the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition.

Appellant does not argue that its situation falls within any of the exceptions set forth in § 553. Instead, Appellant contends two sections of the bankruptcy code, read together, implicitly create an additional exception to a creditor's right of setoff. Specifically, Appellant says §§ 1123(a)(5)(G) and 105(a) provide the necessary authority to reverse a prepetition setoff in order to confirm a reorganization plan because disallowance of the setoff interferes with Appellant's power to cure the loan default, a power that outweighs a creditor's right of setoff. (Appellant's Br. 9, 16.) This reading of the bankruptcy code is unsupported by the plain language of § 553 and contradicts the statement of the Senate when § 553 was enacted:

> This section preserves, with some changes, the right of setoff in bankruptcy cases now found in section 68 of the Bankruptcy Act [section 108 of former title 11]. One exception to the right is the automatic stay, discussed in connection with proposed 11 U.S.C. 362. Another is the right of the trustee to use property under section 363 that is subject to a right of setoff.
>
> The section states that the right of setoff is unaffected by the bankruptcy code except to the extent that the creditor's claim is disallowed, the creditor acquired (other than from the debtor) the claim during the 90 days preceding the case while the debtor was insolvent, the debt being offset was incurred for the purpose of obtaining a right of setoff, while the debtor was insolvent and during

7

> the 90-day prebankruptcy period, or the creditor improved his position in the 90-day period (similar to the improvement in position test found in the preference section 547(c)(5)). Only the last exception is an addition to current law.
>
> As under section 547(f), the debtor is presumed to have been insolvent during the 90 days before the case.

S. Rep. No. 95-989 (1978).

Nothing in either § 1123(a)(5)(G) or § 105(a) can be reasonably construed as granting a debtor in reorganization a superior power to cure a default by reversing a prepetition setoff. Section 1123(a)(5)(G) states, "Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall provide adequate means for the plan's implementation, such as curing or waiving of any default." Section 105(a) provides,

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Appellant has cited no authority resting on Appellant's construction of these two sections in relation to § 553. Consequently, nothing supports Appellant's contention that the bankruptcy court *created an exception* to § 1123's power to cure where that cure involves reversing a setoff. Nor has Appellant cited any authority to support its related contention that § 1124(2)'s definition of an unimpaired claim should be interpreted as including a debtor's power to cure by reversal of a setoff clearly permitted under § 553. Thus, whatever relief Appellant could obtain in connection with the setoff would be based upon the undisputed equitable power of the bankruptcy court.

In interpreting a forerunner to § 553, section 68a of the bankruptcy act of 1898, the Supreme Court stated that the setoff provision was "permissive rather than mandatory, and does not enlarge the doctrine of set-off, and cannot be invoked in cases where the general principles of

set-off would not justify it." *Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 455 (1915). Thus, a bankruptcy court was expected to "exercise[] its discretion in these cases upon the general principles of equity." *Id.* Since § 553 is recognized as having "preserved" the right of setoff in all cases under Title 11 of the United States Code, *see Citizens Bank*, 516 U.S. at 18-19, it is reasonable to regard the equitable nature of the right as also having been "preserved" in the absence of statutory language disclaiming such. As a result, a bankruptcy court need not allow setoff even if a creditor asserts a valid right to it. *In re Vance*, 298 B.R. 262, 267 (Bankr. E.D. Va. 2003). *See generally United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549 (1990) ("[B]ankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships"; interpreting bankruptcy code in relation to application by IRS of trust fund payments to debtor's tax liability); *In re A.H. Robins Co., Inc.*, 880 F.2d 694, 701 (4th Cir. 1989) ("Bankruptcy courts are courts of equity").

Nevertheless, a creditor's right of setoff is favored. "While the operation of this privilege of set-off has the effect to pay one creditor more than another, it is a provision based upon the generally recognized right of mutual debtors, which has been enacted as part of the bankruptcy act, and *when relied upon should be enforced by the court.*" *Cumberland Glass*, 237 U.S. at 455 (emphasis added). The Second Circuit has stated, "The statutory remedy of setoff should be enforced unless the court finds after due reflection allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *Bohack Corp. v. Borden, Inc.*, 599 F.2d 1160, 1165 (2d Cir. 1979). As another court has opined, although a bankruptcy court possesses equitable power in relation to the setoff doctrine, that power still must be exercised within the confines of the bankruptcy code. *French v. Bank One (In re Rehab Project, Inc.)*, 238 B.R. 363, 374 (Bankr. N.D. Ohio 1999). Thus, a court may determine whether to reduce, postpone, or entirely deny a creditor's right of setoff if its application would be unjust or in

violation of public policy. *Id.* However, a judicial presumption exists in favor of allowing setoff, and in the absence of compelling circumstances, a bankruptcy court should generally allow the creditor to exercise the right. *Id. See also SEC v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992) ("strong federal policy towards allowing setoff" should not be "disturbed unless compelling circumstances require it"); *In re Lambert Oil, Inc.*, 347 B.R. 508, 521 (W.D. Va. 2006); *In re Allbrand Appliance and Television Co.*, 16 B.R. 10, 15 (Bankr. S.D.N.Y. 1981) ("But where, as here, no compelling circumstances justifying a denial of setoff are discernible, or have been pleaded, setoff is appropriate" (internal quotation marks omitted)).

Here, the compelling circumstances lie in Appellee's favor. First, all of the cases cited by Appellant, save one, deal with postpetition setoffs. Thus, when postpetition setoffs were not allowed, it was not necessary for a bankruptcy court to reach back in time and undo a valid prepetition setoff. *See, e.g., Dayton Sec. Assocs. v. Cookson (In re Securities Group 1980)*, 74 F.3d 1103, 1114 (11th Cir. 1996) (equities favored limited partnership's creditors where former limited partners, by filing counterclaims for fraud against debtor in bankruptcy court, resisted capital call to satisfy debt obligation predating partners' withdrawal); *United States ex rel. IRS v. Norton*, 717 F.2d 767 (3d Cir. 1983) (affirming disallowance of IRS's retention of tax refund to satisfy prepetition tax liability when IRS had notice of Chapter 13 plan, but did not object); *Diversa-Graphics, Inc. v. Mgmt. & Tech. Servs.*, 561 F.2d 725, 728 (8th Cir. 1977) (affirming disallowance of setoff where equitable considerations included primary consideration of allowing collection of amounts owed to debtor "'to keep its cash inflow sufficient for operating purposes'" (citation omitted)); *Susquehanna Chem. Corp. v. Producers Bank & Trust Co.*, 174 F.2d 783, 787-88 (3d Cir. 1949) (affirming disallowance where debtor company was going concern and needed cash in bank account to remain so during reorganization); *United States IRS v. Driggs*, 185 B.R. 214, 215 (D. Md. 1995) (confirmed reorganization plan, to which IRS did

not object, bound IRS and prohibited agency from setting off refund due to debtor against debtor's tax liability); *Paris v. Transamerica Ins. Group (In re Buckley & Associates Ins., Inc.)*, 78 B.R. 155, 158 (E.D. Tenn. 1987) (setoff disallowed because, one, it may not be used prospectively to ignore current obligation to pay debtor in anticipation of setting it off against later debt and, two, setoff would violate equitable principle that one should not benefit by own wrongful act, in this case, acting on improper desire to achieve setoff of prepetition debt that was included in reorganization).

The one case cited by Appellant in which a bankruptcy court was presented with the question of whether to disallow a prepetition setoff ended in a ruling favorable to the creditor because the debtor did not present "sufficiently egregious circumstances" to justify denial of the setoff. *French*, 238 B.R. at 374. For the sake of argument, this Court presumes a valid prepetition setoff can fall within the scope of equitable discretion possessed by a bankruptcy court, but the inability of Appellant to produce one case in which that discretion was exercised to deny the setoff suggests that such denial should be a rare event.

In addition to the timing—and the previously noted lack of mutuality between the debtors—another compelling circumstance is the absence of any evidence that the monies in the collateral deposit account were available as a current asset to Appellant to use for cash flow in its routine operations. *See Diversa-Graphics*, 561 F.2d at 728 (important factor); *Susquehanna Chem.*, 174 F.2d at 787-88 (same). Undoubtedly, the reason for this is that the deposit account was to be held by Patapsco as collateral, and funds were to be released from it only upon attainment by the shopping center of certain percentages of leased space. The account was obviously not intended to serve as a routine cash account for Properties's operations.

Appellant offers no argument of "compelling circumstances" to justify an equitable reversal of the setoff by Patapsco against the collateral deposit account of Holdings. The

bankruptcy court correctly declined to approve Appellant's disclosure statement because the plan's required reversal of setoff was unconfirmable.

### B.  *Vacating of Confessed Judgments*

The deficiencies in Appellant's argument pertaining to setoff apply with equal force to Appellant's argument as to the vacating of confessed judgments obtained by Patapsco against nondebtor parties. While acknowledging that the exercise of its equitable powers may affect nondebtors in some circumstances, the bankruptcy court rightly regarded both the setoff reversal and this proposed requirement of the plan as "broad and unfettered authority over non-debtor parties and their assets." (Mem. Op. 10.) The cases cited by Appellant to support its argument are inapposite.

The case of *In re Delta Airlines, Inc.*, 370 B.R. 537 (Bankr. S.D.N.Y.), *aff'd*, 374 B.R. 516 (S.D.N.Y. 2007), *aff'd*, 309 F. App'x 455 (2d Cir. 2009), involved the ability of a bond trustee to negotiate a settlement on behalf of bondholders and had no relation to the vacating of judgments against nondebtor parties.

The *Robins* case held,

> where the entire reorganization hinges on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor, we do not construe [11 U.S.C.] § 524(e) so that it limits the equitable power of the bankruptcy court to enjoin the questioned suits.

880 F.2d at 702. That case involved the Dalkon Shield and many personal injury claimants who sought to sue Robins's directors and attorneys as well as its insurer and the insurer's attorneys as joint tortfeasors. It hinged upon the interpretation of § 524(e), which provides that discharge of a debtor's debt does not affect any other entity's liability for the debt. *Robins* represents a narrow judicial exception that is factually distinguishable from the instant case. Protection of a debtor from indirect liability claims on a debt is simply not the legal equivalent of requiring a creditor to

vacate confessed judgments from nondebtor guarantors. Appellant has failed to show how such a drastic impairment of Patapsco's rights is essential to its reorganization.

Three other cases involved confirmed plans that included a temporary injunction to prevent creditors from pursuing suit for recovery from guarantors while also receiving payment from the debtor under the plan. *In re Linda Vista Cinemas, LLC*, 442 B.R. 724 (Bankr. D. Ariz. 2010); *In re Shaw Aero Devices, Inc.*, 283 B.R. 349 (Bankr. M.D. Fla. 2002); *In re Seatco, Inc.*, 259 B.R. 279 (Bankr. N.D. Tex. 2001). None of the cases required a creditor to vacate lawfully obtained judgments against nondebtor guarantors and their reasoning cannot be stretched to embrace such an extreme result.

Finally, the case of *In re Lemma*, 394 B.R. 315 (Bankr. E.D.N.Y. 2008), is also wide of the mark. It simply stands for the proposition that a Chapter 13 plan to cure arrearages on a residential mortgage applies not only to the spouse who filed the Chapter 13 petition but also to the nonfiling spouse. *Id.* at 322. The nonfiling spouse's status as a codebtor is not analogous to a nondebtor guarantor against whom a judgment has been obtained. The bankruptcy court correctly denied approval of the disclosure statement on this second ground.

## V. Conclusion

Appellant fails to persuade this Court that the bankruptcy court's ruling denying approval to Appellant's disclosure statement was in error. Neither of the two conditions for approval, found to be fatally deficient by the bankruptcy court, is sustainable as a matter of law. By separate order, the ruling will be affirmed and this case will be remanded for further proceedings in the bankruptcy court.

DATED this 6<u>th</u> day of August, 2012.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge